UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

MICHELLE ALBERTELLI,

                          Plaintiff,

          -vs-                              **No. 09-CV-6039(MAT)**
                                            **DECISION AND ORDER**
MONROE COUNTY, PATRICK O'FLYNN,
SHERIFF, MONROE COUNTY; GARY
CAIOLA, UNDERSHERIFF, MONROE
COUNTY SHERIFF'S DEPARTMENT,
Individually and in His Official
Capacity; & DR. BORRIS SCHMIGEL,
Individually and in His Official
Capacity, and ROBERT BILSKY,
Individually and in His Official
Capacity,

                          Defendants.

─────────────────────────────────

## I.   Introduction

     Plaintiff Michelle Albertelli ("Albertelli" or "Plaintiff"),
represented by counsel, has filed the instant proceeding against
the named Defendants charging them with, _inter_ _alia_, violations of
the Americans with Disabilities Act ("ADA"), the New York State
Human Rights Law ("NYHRL"); and her rights to equal protection,
substantive due process, and procedural due process under the
United States Constitution. Defendants have filed their First
Motion to Dismiss the Complaint (Dkt. #14) to which Plaintiff has
filed opposition papers (Dkt. #15). For the reasons that follow,
the Motion to Dismiss is granted in part and denied in part.

## II.  Factual Background

     In the following factual recitation, the Court accepts as true
all facts alleged in the complaint and draws all reasonable

inferences in favor of the plaintiff. E.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted).

On July 15, 2004, Plaintiff was employed as a Deputy Sheriff at the Monroe County Jail (the Jail), responsible for, inter alia, guarding inmates and ensuring that order, discipline, safety, and security were maintained in the Jail. On that date, inmate Louis Delvalle ("Delvalle") and another inmate were involved in verbal altercation at the Jail. Delvalle was outside of his own cell, and the other inmate was inside a locked cell. Plaintiff asked Delvalle to go into his own cell and "lock in". When Delvalle did not immediately comply, Plaintiff took hold of his right arm, and another deputy took hold of Delvalle's left arm so as to escort him out of the cell block and into his own cell. Delvalle swung around suddenly, causing Plaintiff to lose her balance and fall to the floor, dislocating her left shoulder. Plaintiff characterizes the incident as a "violent attack", which Defendants dispute.

Beginning in July 2004, Plaintiff was paid benefits pursuant to New York State General Municipal Law § 207-c. She received these benefits for a period of over three years.

Plaintiff remained out of work until September 2008. During that time, she submitted to three independent medical examinations by Dr. Totero (September 2008), Dr. Auerbach (September 21, 2007), and Dr. Durning (May 8, 2008).

Plaintiff filed for disability retirement on October 31, 2008, as her private physician, Dr. Maloney, deemed her "totally disabled to work . . . in large part because she only had use of one arm." Amended Complaint ("Am. Compl."), ¶18 (Dkt. #2). She states that she "has been rendered lame to protect herself or others in the jail-house setting" because she "cannot carry a gun, pepper spray, or even handcuffs" and cannot "assist in the use of force continuum[.]" Id., ¶¶20, 21. Due to what she describes as the "violent nature" of the July 15, 2004 "attack in the line of duty that rendered her disabled", Plaintiff "suffers from emotional issues, in particular, depression and anxiety." Id., ¶22. She states she is limited to the use of only her right arm. To this day, Plaintiff says, she remains under the care of a rehabilitation specialist and undergoes treatment for the condition in her left upper arm and shoulder.

On October 31, 2008, the date she claims she filed for disability retirement, Defendants ordered her to return to duty on November 3, 2008, at 8 a.m., per in-house physician Dr. Shmigel's orders. Am. Compl., ¶26. Plaintiff alleges that the decision to return her to work was made by Undersheriff Gary Caiola ("Undersheriff Caiola"), who "has a pattern and practice of returning disabled [employees in the] Sheriff's Department back to work despite their inability to do so, and without conducting a hearing in violation of Plaintiff's due process rights to her

section 207-c benefits." Id., ¶27. Plaintiff alleges that Dr. Shmigel and Undersheriff Caiola acted under the directive of Risk Manager Robert J. Bilsky ("Bilsky") pursuant to a policy of cutting costs by returning disabled employees to work. Id., ¶28.

"Mysteriously", on the same day that Plaintiff filed for disability retirement and was ordered to return to work, her physician, Dr. Maloney, "was compelled to *change* Plaintiff's diagnosis to read that Plaintiff '[m]ay return to work on 10/31/08' by Dr. Schmigel [sic]." Am. Compl., ¶29 (emphasis in original). Plaintiff's Section 207-c disability benefits were terminated on an unspecified date in November 2008, and she was not afforded a hearing prior to the termination.

On November 24, 2008, Plaintiff sought an accommodation from Defendants to allow her to return to a position which, "at the bare minimum[,] would not require her to pass into the secured portion of the jail and there would be no inmate contact, that she would not utilize her left arm, and that these restrictions would be adhered to, and that she would not be involved in any situation that would place herself or others in danger." Id., ¶33.

Plaintiff states that despite the fact she was deemed "unqualified" pursuant to New York law to assist in the use of force continuum, Defendants compelled Plaintiff to report to the Jail in uniform at the "Visits Lobby" front counter. Id., ¶34. Plaintiff alleges that a position was available in "Staff Services"

which would have removed Plaintiff from the inmate population, but it was never offered to her. Id., ¶35.

Plaintiff returned to work at the "Visits Lobby" for a two-week period during which time she was subjected to three incidents in which the use of force was necessary. Id., ¶36. Plaintiff describes only two incidents in her Amended Complaint. On December 6, 2008, an inmate entered the "Visits Lobby" front counter and became disruptive, knocking over jail property. Id., ¶37. Plaintiff contacted 911 in vain while the inmate stood in close proximity to her, placing her in fear for her safety because she could not defend herself. On December 23, 2008, Plaintiff was confronted, while at work, with a situation in which a male was pointing a gun at a female. Plaintiff could not protect herself or the victim due to her disability which precluded her from carrying a service weapon.

Plaintiff complained to her supervisors that she could not perform the essential functions of her job, and that she felt she was being placed in the untenable position of being forced to quit her job and forego her benefits. Plaintiff's supervisor allegedly took no actions to accommodate her known disabilities and responded, "[W]here do we draw the line?" Am. Compl., ¶42.

On December 31, 2008, Plaintiff met with Sheriff's Department Physician Dr. Shmigel who "informed Plaintiff that it was 'out of his hands,' and returned the Plaintiff to work." Id., ¶43.

Plaintiff's private physician contradicted Dr. Shmigel's finding that Plaintiff was able to return to work, and removed Plaintiff from work due to the failure of the County to accommodate her known disabilities or to comply with the job restrictions she had demanded (i.e., no use-of-force continuum).

On January 3, 2009, Plaintiff was served by Sheriff's Department deputies with a "Return to Work Order" threatening disciplinary action if she did not return to work. On January 5, 2009, Plaintiff's private physician rendered her "totally disabled" due to the Sheriff's Department's lack of adherence to her job restrictions. Dr. Shmigel allegedly continued to contact Plaintiff's doctor to persuade him to alter his medical opinion. Plaintiff's physician refused to take his calls.

Although Plaintiff's Section 207-c benefits were terminated in November 2008, Defendants served her with a notice on January 15, 2009, stating that the County "is seeking to terminate your GML-207-c benefits based upon your refusal to work a light duty assignment for which you have been deemed capable of working" and threatening further disciplinary action "as a result of [her] continued insubordination." Am. Comp., ¶49. Plaintiff's counsel advised the County that Plaintiff's Section 207-c benefits had already been terminated.

After being served with the original Complaint in this action, Undersheriff Caiola threatened Plaintiff on February 3, 2009, with

insubordination if she did not return to work in her uniform.  On February 5, 2009, Plaintiff's treating physician deemed Plaintiff totally disabled until reevaluation on March 12, 2009. The narrative in Plaintiff's Amended Complaint ends at that point.

Plaintiff filed three complaints with the Equal Employment Opportunity Commission ("EEOC"). The first, EEOC #585-2009-00265, was filed on January 6, 2009, and named Undersheriff Caiola as an Aider and Abettor of violations of the ADA. The EEOC informed Plaintiff that it lacked jurisdiction to investigate her ADA charge because she was not a "qualified individual with a disability" based upon her statements that she "can no longer perform the essential functions of [her] position and that there is no accommodation that will enable [her] to perform the essential functions of a Deputy Sheriff." Def. Ex. A, Dkt. #14-2. The EEOC issued a dismissal notice and right to sue letter. Id.

In the second complaint, EEOC #525-2009-00326, Plaintiff states that she previously filed an EEOC complaint on January 6, 2009, after which she was served on January 14, 2009 with papers ordering her to report to an Internal Affairs hearing, "in retaliation for having engaged in protected activity under the ADA." Def. Ex. B, Dkt. #14-3. The EEOC forwarded Plaintiff's request for a right to sue letter to the Unites States Department of Justice. Id.

On April 1, 2009, Robert Bilsky, the Monroe County Risk Manager, stated that he was pleased to offer Plaintiff a temporary modified-duty assignment which would accommodate the restrictions her doctors deemed appropriate for her present medical condition. The position would include clerical work, answering phones, data entry, recordkeeping. Plaintiff stated that these "make-work" tasks led to feelings of "incompetency" and "worthlessness"–which were the basis for her third EEOC complaint, discussed below. The modified duty assignment was to continue until July 3, 2009, at which time she would be required to provide an update on her medical condition so that the Sheriff's Department could determine whether her work restrictions should be removed. Plaintiff admitted that she did not work from February 4, 2009, until March 2, 2009, because the Sheriff's Department did not meet her restrictions.

On April 8, 2009, Plaintiff was charged with two insubordination disciplinary actions–one being a violation of rules set forth in Undersheriff Caiola's letter dated February 3, 2009; and the second being her refusal to work in the position she was offered as an accommodation.

On May 13, 2009, Plaintiff alleges, Undersheriff Caiola gave her "an evil eye" until she looked away. On May 12, 2009, Investigator Pat Crow stared her down and gave her "an evil eye".

Plaintiff then filed her third complaint, EEOC #525-2009-00729, against the Monroe County Sheriff's Department on May 13,

2009. She alleged that she was given the "evil eye" by Undersheriff Caiola and Investigator Crow, was assigned menial work that made her feel worthless, and was issued a memorandum stating she was insubordinate for not reporting to work because of her disability and in retaliation for filing a previous EEOC charge, #525-2009-00265. The EEOC found that Plaintiff failed to report to work despite her employer's agreement to accommodate her restrictions, which was a non-discriminatory reason for disciplinary action. With regard to her complaints of feeling "worthless", the EEOC stated that her employer was not required to provide her preferred accommodation as long as it provided a reasonable accommodation that met her restrictions. With regard to the "evil eye" allegation, the EEOC found that it was not severe or pervasive, and it did not rise to the level of a hostile work environment. In sum, the EEOC was unable to conclude that the information established a violation of federal law by the Sheriff's Department. The EEOC issued a Notice of Dismissal and a Right to Sue on April 20, 2010.

Defendants state that Plaintiff is currently employed three days a week at Jail Administration and two days a week at Jail Fleet. Prior to that she was assigned to Jail Visitation, which she did not like. She was given a transfer to Booking, which she also did not like. She was transferred to Jail Monitor, which she did not like. According to Defendants, Plaintiff does not like her current assignment in Jail Fleet.

### III. Legal Principles Applicable to a Rule 12(b)(6) Motion to Dismiss

Defendants' motion seeks dismissal of the complaint pursuant to Fed. R. Civ. P. ("Rule") 12©. The standards applicable in deciding a motion to dismiss under Rule 12(b)© apply in the Rule 12© context:

> To sufficiently state a claim to relief and survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Id. Rather, there must be "enough facts to state a claim to relief that is plausible on its face."

Id. at 570; see also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations," Iqbal, 129 S. Ct. at 1950, and must consider "not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents

incorporated by reference." <u>Gregory v. Daly</u>, 243 F.3d 687, 690 (2d Cir. 2001); <u>see</u> <u>Austin v. Ford Models, Inc.</u>, 149 F.3d 148, 152 (2d Cir. 1998). In addition, the Court may consider documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. <u>See</u> <u>Brass v. American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991).

## IV. Analysis

### A. First Cause of Action: Violation of the ADA

#### 1. Administrative Exhaustion

Defendants argue that Plaintiff has failed to exhaust her ADA claim because the EEOC dismissed her complaint on the basis that it lacked jurisdiction to investigate the ADA charge because her "allegations did not involve a disability as defined by the [ADA]." EEOC Dismissal, Defendants' Exhibit ("Def. Ex.") A (quoted in Defendants' Memorandum of Law ("Def. Mem.") at 7 (Dkt. #14-7)). Plaintiff asserts that she has complied with all relevant procedural conditions precedent to filing this action, but does not directly address whether she is required to exhaust administrative remedies under the ADA. <u>See</u> Pl. Mem. at 11 (stating that she need not have filed an EEOC charge prior to commencing an action under 42 U.S.C. § 1983; and that she did not need to name Dr. Shmigel,

Bilsky, and Sheriff O'Flynn in the EEOC complaint because there is no individual liability under the ADA as a matter of law).[1]

"Whether an ADA claim must first be presented to an administrative agency depends on which precise title of the ADA the claim invokes. Title I prohibits employers from discriminating against disabled employees, see 42 U.S.C. § 12112(a), while Title III forbids discrimination "'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation,' id. § 12182(a)." McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2005). Albertelli's claim is brought under Title I of the ADA, 42 U.S.C. § 12112(a), see Pl. Mem. at 8 (Dkt. #15), and therefore exhaustion of administrative remedies is required, McInerney, 505 F.3d at 138 (citations omitted).

"[A] plaintiff claiming employment discrimination based upon disability pursuant to Title I of the ADA would be required to exhaust administrative remedies by filing a timely complaint with the EEOC, obtaining a right to sue letter, and commencing suit within 300 days." Sworn v. Western N.Y. Childrens' Psychiatric Ctr., 269 F. Supp.2d 152, 158 n.4 (W.D.N.Y. 2003) (citing 42 U.S.C. § 12117 (applying Title VII administrative procedures to ADA

---

[1]

Notwithstanding this assertion, Plaintiff did name one individual in her EEOC complaint, Undersheriff Caiola.

claims); 42 U.S.C. § 2000e-5). Defendants argue that Plaintiff failed to exhaust her remedies with regard to her ADA claim because the EEOC dismissed her first complaint for lack of jurisdiction. However, as Defendants admit, the EEOC did provide Plaintiff with a right to sue letter in connection with her second complaint alleging a violation of the ADA as well as a claim of retaliation. See Def. Mem. at 3 (citing Def. Ex. B, EEOC #525-2009-00326), and Plaintiff timely commenced suit in this Court. Therefore, the Court concludes that Plaintiff has adequately exhausted her administrative remedies with regard to her ADA claim.

### 2. The ADA

The ADA provides in relevant part as follows:

> No covered entity shall discriminate against a *qualified individual* with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869 (2d Cir. 1998) (citing Wernick v. Federal Reserve Bank of N.Y., 91 F.3d 379, 383 (2d Cir.1996)). Albertelli's ADA claim is of the "failure to reasonably accommodate" variety, which requires that she demonstrate the following elements: (1) her employer is subject to the ADA; (2) she is an individual with a disability within the meaning of the ADA; (3) with or without

reasonable accommodation, she could perform the essential functions of the job; and (4) the employer had notice of the employee's disability and failed to provide such accommodation. E.g., Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); Lyons v. Legal Aid Society, 68 F.3d 1512, 1515 (2d Cir. 1995). Defendants argue that Plaintiff has failed to demonstrate that she fulfills any of the four requirements. See Defendants' Memorandum of Law ("Def. Mem.") at 7-13) (Dkt. #14-7).

> **a.   Plaintiff is not a qualified individual with a disability.**

"Title I of the ADA . . . is only applicable to a 'qualified individual with a disability' which has been defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Bril v. Dean Witter, Discover & Co., 986 F. Supp. 171, 172-73 (S.D.N.Y. 1997) (footnote omitted) (quoting 42 U.S.C. § 12111(8)) & id. n.2 (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1480-81 (9th Cir. 1996) (citations omitted)). A plaintiff asserting an ADA claim bears the burden of proving that she is a qualified individual with a disability. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 1603 (1999). "Accordingly, where an individual claims that he/she is totally disabled and unable to perform any of the essential functions of his/her job, he/she is not a [qualified individual with a disability] under the ADA."

Muller v. First Unum Life Ins. Co., 90 F. Supp.2d 204, 208 (N.D.N.Y. 2000) (citing Violette v. International Bus. Machines Corp., 962 F.Supp. 446, 449 (D.Vt. 1996), aff'd, 116 F.3d 466, 1997 WL 314750 (2d Cir. 1997); other citation omitted).

Defendants argue that because Plaintiff has continuously sworn that she was completely disabled, she cannot demonstrate that she is disabled for purposes of the ADA. See EEOC Letter & Dismissal, 1/8/09, Def. Ex. A ("You have stated that you can no longer perform the essential function of your position and that there is no accommodation that will enable you to perform the essential functions of a Deputy Sheriff."); see also EEOC Charges, Def. Exs. B & C (Dkt. #14). See Bril v. Dean Witter, Discover & Co., 986 F. Supp. 171, 175 (S.D.N.Y. 1997) (holding that plaintiff "who admittedly was totally disabled at the time her benefits were discontinued" was not a qualified individual with a disability and therefore, could not sue her employer under the ADA).

The Supreme Court has held that "statements made for the purpose of securing disability benefits, describing why the claimant is too disabled to work, do not necessarily bar the disabled individual from claiming in an ADA action that he can perform the essential functions of the job at issue." Parker v. Columbia Pictures Indus., 204 F.3d 326, 333 (2d Cir. 2000) (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, ____, 119 S.Ct. at 1602). Where an ADA plaintiff has, for example, claimed total

disability from working in a different forum, "the court must undertake a fact-specific analysis of whether the claims made in the [earlier] application directly contradict the allegations made in the ADA context." Id. (citing Cleveland, 526 U.S. at ____, 119 S.Ct. at 1603). "Where a case involves an apparent conflict between the two sets of statements, the plaintiff must offer some explanation for the inconsistency." Id.

Here, Plaintiff has offered no such explanation for the inconsistencies of her statements regarding her level of disability. See Potter v. Xerox Corp., No. 00-7470, 1 Fed. Appx. 34, *36, 2001 WL 15617, at **1 (2d Cir. Jan. 5, 2001) (unpublished opn.) ("Potter has alternately stated-and the record supports-two contradicting propositions: 1) that he is totally disabled and thereby unable to perform any job; and 2) that he can perform any job provided his stress-related problems are resolved by placing him under a new supervisor. Neither proposition brings Potter within the reach of the ADA's protections."). Moreover, her assertion that she was totally disabled and unable to perform her job even *with* reasonable accommodations not made in a different forum or context, as in Cleveland, but instead was made in support of her ADA claim presented to the EEOC. Contrast with Cleveland, 526 U.S. at ___, ___, 119 S. Ct. at 1600, 1604 (although the plaintiff's SSDI forms stated at various points that she had "not been able to work since" her termination from her job, that she was

"still disabled," and that she was "totally disabled," the Supreme Court accepted the plaintiff's assertion that these statements "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work", in contrast to the ADA, which was designed "to guarantee [disabled] individuals equal opportunity" to work by requiring that employers make accommodations where appropriate) (quotation to record omitted).

Plaintiff's sworn averments preclude a finding that she is a qualified individual with a disability for purposes of the ADA. Her inability to establish this necessary element is fatal to her ADA claim. See Muller v. First Unum Life Ins. Co., 90 F. Supp.2d 204, 208 (N.D.N.Y. 2000) "[T]he amended complaint states that 'Muller remains unable to perform *each* of the material duties of his former regular occupation.' (emphasis in the original). Muller has never claimed that he is capable of working with or without a reasonable accommodation. Muller's failure to establish that he is a [qualified individual with a disability] is fatal to his ADA claim."). Accordingly, the first cause of action alleging a violation of the ADA is dismissed.

### B.   Second Cause of Action: The NYHRL Claim

Plaintiff contends in her second cause of action that Undersheriff Caiola violated the NYHRL, N.Y. Exec. Law §296.6, as an "aider and abettor". Executive Law § 296.6 provides that "[i]t

shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of the acts forbidden under [the NYHRL], or to attempt to do so." N.Y. EXEC. LAW § 296.6. Defendants argue that Plaintiff failed to serve a timely notice of claim on the County of Monroe in compliance with New York General Municipal Law ("G.M.L.") § 50-e. Plaintiff claims that this argument is misplaced because her third cause of action is pursuant to the equal protection clause, and her fourth through sixth causes of action are pursuant to 42 U.S.C. § 1983. Therefore, Plaintiff argues, according to the Supremacy Clause of the United States Constitution, she did not need to comply with G.M.L. § 50-e.

Defendants also argue that because Monroe County, Sheriff O'Flynn, Dr. Shmigel, and Bilsky were not named in any of the EEOC complaints or right to sue letters, the NYHRL claims as to them must be dismissed. Plaintiff argues that this is "nonsensical" because she seeks redress under 42 U.S.C. § 1983, and it is well-settled that there can be no individual liability under the ADA as a matter of law. Plaintiff has overlooked that she expressly pleaded a claim under the NYHRL in her second cause of action, and fails to address Defendants' arguments regarding the G.M.L. as applied to the NYHRL claim.

New York General Municipal Law § Section 50-e(1)(a) provides that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an

action . . . against a public corporation, . . . the notice of claim shall . . . be served . . . within ninety days after the claim arises." N.Y. GENERAL MUNICIPAL LAW § 50-e. G.M.L. § 50-e(1)(b) also states that "[i]f an action or special proceeding is commenced against [an officer, appointee or employee of a public corporation], but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law." N.Y. GENERAL MUNICIPAL LAW § 50-e. "A public corporation has a statutory obligation to indemnify if the officer, appointee or employee was acting within the scope of his or her employment in committing the alleged tortious acts." Smith v. Scott, 294 A.D.2d 11, 19, 740 N.Y.S.2d 425 (2d Dept. 2002).

However, the applicability of G.M.L. § 50-e "is confined to tort claims for personal injury, wrongful death, or damage to property and not to torts generally." Mills v. Monroe County, 89 A.D.2d 776, 776, 453 N.Y.S.2d 486, 487 (4th Dept. 1982) (citing N.Y. GENERAL MUNICIPAL LAW § 50-i(1) ("No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act . . . unless . . . a notice of claim shall have been made and served

. . .").  An action brought under the NYHRL, N.Y. Exec. Law § 296 "is not a tort claim which falls within the notice provisions of the General Municipal Law." <u>Mills</u>, 453 N.Y.S.2d at 487. Nonetheless, Albertelli's second cause of action must be dismissed for failure to comply with the applicable notice of claim requirement.

Section 52 of the New York County Law requires a notice of claim to be served, in compliance with G.M.L. § 50-e, upon a county in any "claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees . . ."  Plaintiff's action seeks money damages for the alleged wrongful acts of Monroe County and the Monroe County Sheriff's Department and its employees. Her conceded failure to file the requisite notice of claim within 90 days after her claim accrued bars her action. <u>See</u> <u>Mills</u>, 453 N.Y.S.2d at 487 (dismissing plaintiff's action for money damages alleging wrongful discharge (racial discrimination) from employment by defendant in violation of the NYHRL, N.Y. Exec. Law § 296 due to plaintiff's failure to file a timely notice of claim pursuant to G.M.L. § 50-e and N.Y. County Law § 52) (citations omitted). The second cause of action alleging a violation of the NYHRL accordingly is dismissed.

**C.   Third Cause of Action: Equal Protection and Due Process**

Plaintiff asserts that Defendants violated her right to procedural due process under the Fourteenth Amendment by denying her benefits under G.M.L. § 207-c without a hearing. In addition, Plaintiff asserts in the Amended Complaint that "in particular" her rights under the Equal Protection Clause were violated by the deprivation of an administrative hearing. Id., ¶69.[2]

Although Plaintiff's Amended Complaint contains allegations reciting the legal standard applicable to a _substantive_ due process claim (as opposed to a _procedural_ due process claim) (e.g., she claims that the deprivation of her due process rights was "egregious and shocking to the conscience", Am. Comp., ¶69), Plaintiff expressly states in her opposition papers that she is _not_ asserting a substantive due process claim. Therefore, the Court analyzes Defendants' motion to dismiss in relation to Plaintiff's equal protection and procedural due process claims.

**1.   Equal Protection**

The Equal Protection Clause requires that the government treat all similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although the Amended Complaint is far from clear on this point, it appears that Albertelli is claiming that the termination of her G.M.L. § 207-c

---

[2]

This citation refers to the second "¶69" on page 11 of the Amended Complaint.

benefits without a hearing violated her right to equal protection of the laws. Such a claim would have to be based upon the "class of one" equal protection doctrine, which provides that a successful equal protection claim can be brought by a "class of one," "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (internal quotation marks omitted).

In 2008, the United States Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." Engquist v. Oregon Dept. of Agr., 553 U.S. 591 (2008). Here, Plaintiff is a public employee challenging a decision made by her employer, and Engquist controls. See, e.g., Appel v. Spiridon, 531 F.3d 138, 139-40 (2d Cir. 2008) (per curiam) (holding that, in light of Engquist, "the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability"); Gentile v. Nulty, 769 F. Supp.2d 573, S.D.N.Y. 2011) (dismissing, pursuant to Engquist, equal protection claim brought by police officer alleging erroneous decision by his employer that he was no longer eligible for G.M.L. § 207-c benefits). Plaintiff's third cause of action, to the extent it alleges an equal protection violation, is dismissed.

## 2.   Procedural Due Process

"Pursuant to General Municipal Law § 207-c, municipalities meeting certain population criteria are directed to pay continued salary or wages to officers who sustain a disability in the course of their employment." Park v. Kapica, 8 N.Y.3d 302, 310 (2007). The continued receipt of G.M.L. § 207-c disability payments is "not absolute", and a "municipality is entitled to its own medical examination of its employee[.]" Id. (citing N.Y. GENERAL MUNICIPAL LAW § 207-c(1)). If the municipality's physician's opinion is that the officer can perform "specified types of light police duty," payment of the full amount of salary or wages may be discontinued should the officer refuse to return to work if a light-duty assignment "is available and offered to him". Id. (citing N.Y. GENERAL MUNICIPAL LAW § 207-c(3)).

The right of a disabled public employee to receive disability payments under G.M.L. § 207-c constitutes "a property interest giving rise to procedural due process protection, under the Fourteenth Amendment, before those benefits are terminated[.]" Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. City of Cohoes, 94 N.Y.2d 686, 691 (2000) ("Uniform Firefighters of Cohoes"). Accordingly, the right to a "due process hearing is triggered when an officer on section 207-c status submits evidence from his treating physician supporting the officer's claim of 'continued total disability[.]'" Park, 8 N.Y.3d at 310 (quoting

<u>Uniform Firefighters of Cohoes</u>, 94 N.Y.2d at 692 (pursuant to the analogous provision G.M.L. § 207–a, firefighters who contest a light-duty determination are entitled to a due process hearing)).

Although the Defendants entirely failed to address Plaintiff's procedural due process claim in their motion to dismiss, discussing only her equal protection and substantive due process claims, the Court concludes that Albertelli's complaint adequately pleads a cause of action alleging a procedural due process violation. Plaintiff alleges that her disability benefits issued pursuant to G.M.L. § 207-c were discontinued without her first receiving a hearing. Therefore, Defendants' motion to dismiss plaintiff's due process claim is denied.

### D.    Fourth Cause of Action: Civil Rights Conspiracy

Plaintiff contends in the Amended Complaint that Undersheriff Caiola, Dr. Shmigel, and Bilsky conspired to violate her civil rights in violation of 42 U.S.C. § 1983. As Defendants point out, the claim should be asserted under 42 U.S.C. § 1985, which specifically applies to alleged conspiracies. <u>E.g.</u>, <u>Webb v. Goord</u>, 340 F.3d 105, 111 (2d Cir. 2003).

In order to maintain an action under § 1985, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" <u>Id.</u> (quoting <u>Romer v. Morgenthau</u>, 119 F. Supp.2d 346, 363 (S.D.N.Y. 2000) (citations omitted)).

Plaintiff alleges that Undersheriff Caiola, Dr. Shmigel, and unidentified "others" "procured through coercion and pressure the denial of Plaintiff's § 207-c benefits without a hearing upon the directive from . . . Bilsky to return all disabled workers to work to save on costs"; "compelled Plaintiff back to work without compelling medical evidence, and disregarded the evidence of Plaintiff's treating physician and/or compelled Plaintiff's treating physician to alter his medical findings . . . ."; and "placed Plaintiff in a precarious position at work, forcing here to were a uniform in a jail setting with no ability to use any defensive measures to protect herself . . . ." Am. Compl., ¶¶75(A)-(C) (Dkt. #2).

The Court concludes that Plaintiff has "not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants." Webb, 340 F.3d at 111. Her "conspiracy allegation must therefore fail." Id. (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper)); see also Warren v. Fischl, 33 F. Supp.2d 171, 177 (E.D.N.Y. 1999) (finding plaintiff's allegation of conspiracy insufficient despite specific claims of conspiracy to alter tapes and create illegal search warrants, as there was no basis for the assertion that defendants actually conspired together to bring about these actions); Hickey-McAllister

v. British Airways, 978 F. Supp. 133, 139 (E.D.N.Y.1997) (mere allegations that defendants' actions were committed "in furtherance of a conspiracy" were not enough, as "plaintiff has alleged no facts at all from which a meeting of the minds between [defendants] on a course of action intended to deprive plaintiff of her constitutional rights can be inferred") (citing San Filippo v. United States Trust Co. of N.Y., 737 F.2d 246, 256 (2d Cir. 1984)). Plaintiff's fourth cause of action accordingly is dismissed.

**E.   Fifth Cause of Action: Supervisor's Liability**

Plaintiff's fifth cause of action titled "42 U.S.C. § 1983 Supervisory Liability" is brought against Sheriff Patrick O'Flynn, whom she alleges allowed Undersheriff Caiola, Dr. Shmigel, and Bilsky, to "act[ ] with impunity in an environment in which they were not trained, supervised, or disciplined . . . ." Am. Compl., ¶78 (Dkt. #2). Defendants' memorandum of law does not specifically address the Fifth Cause of Action against Sheriff O'Flynn, but instead treats the Fifth Cause of Action as essentially duplicative of the Sixth Cause of Action alleging municipal liability against Monroe County. See Def. Mem. at 22-25 (Dkt. #14-7). They are legally distinct, however.

Under section 1983 only a defendant who "personally 'subjects, or causes to be subjected' any person to the deprivation of any federal right will be held liable. Accordingly, 'personal involvement of defendants in alleged constitutional deprivations is

a prerequisite to an award of damages under § 1983.'" <u>Dove v. Fordham University</u>, 56 F. Supp.2d 330, 336 (S.D.N.Y. 1999)(quoting <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986)).

Plaintiff's allegations against Sheriff O'Flynn appear to be based entirely on his position at the top of the chain-of-command. However, a "plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority" within the relevant governmental agency or department. <u>Burgess v. Morse</u>, 259 F. Supp.2d 240, 248 (W.D.N.Y.2003) (citing <u>inter alia</u>, <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.") (citations omitted)).

The Amended Complaint alleges that Sheriff O'Flynn provided "grossly inadequate training, supervision and discipline" of Undersheriff Caiola, Dr. Shmigel, and Bilsky, which caused them to deprive Plaintiff of her "clearly established constitutional rights, including her right to be free from the deprivation of property without due process of law", <u>see</u> Am. Compl., ¶79; and that "no reasonable police supervisor in 2009 would have believed that grossly negligent, reckless and deliberately indifferent supervision in the face of actual or constructive notice of misconduct by subordinates such as Bilsky, Caiola or Schmigel [sic]

was lawful", see id., ¶80. Other than these conclusory allegations, however, there is no factual basis established to demonstrate Sheriff O'Flynn's personal involvement in the alleged constitutional violations. The fifth cause of action accordingly is dismissed. See Black, 76 F.3d at 75 ("Since there was no indication in the present case that Coughlin had any role in the proceedings concerning Black, the dismissal of Black's claim against Coughlin was proper."); Houghton v. Cardone, 295 F. Supp.2d 268, 276 (W.D.N.Y. 2003) (complaint alleging that defendant sheriff (1) failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) "failed to institute a proper system of review and reprimand" of his deputies so as to prevent the types of unlawful acts alleged was too conclusory to establish defendant's personal involvement). Plaintiff's fifth cause of action accordingly is dismissed.

**F.   Sixth Cause of Action: Municipal Liability**

For her sixth cause of action, Plaintiff alleges that "[t]hrough the deliberate indifference of its final policy maker for the Monroe County Sheriff's Office, defendant Patrick O'Flynn, [sic] intentionally, maliciously, and with reckless disregard for and deliberate indifference to Plaintiff's rights, created and maintained an unconstitutional official custom, practice, or policy, by participating in the denial of due process upon the directive of Robert J. Bilsky, Risk Manager for the County of

Monroe." Am. Compl., ¶83 (Dkt. #2).  A municipality is subject to liability for damages under 42 U.S.C. § 1983 when an official municipal policy or custom contributes to a constitutional deprivation. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom . . . inflicts [an] injury . . . the government as an entity is responsible under § 1983."). The "policy or custom" requirement "is intended simply to distinguish acts of the municipality from acts of its employees, in order that municipal liability be limited to conduct for which the municipality is actually responsible." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-80 (1986)).  A plaintiff must establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.

Defendants contend that Plaintiff has "fail[ed] to plead, in any fashion, the existence of any municipal policy which caused Monroe County Employees to allegedly violate Plaintiff's constitutional rights." Def. Mem. at 22 (Dkt. #14-7). Plaintiff argues in her opposition papers that her rights were deprived "not as a result of the enforcement of an unconstitutional official policy or ordinance, but by the unconstitutional application of a valid policy, or by a [municipal] employee's single tortious decision or course of action," Pl. Mem. at 15 (quoting Amnesty Am.

v. Town of West Hartland, 361 F.3d 113, 126 (2d Cir. 2004)).
Plaintiff's Amended Complaint alleges that the constitutionally
offensive policy was that of "returning disabled employees back to
work without competent medical evidence in an attempt to compel
them to quit their positions with the County, and depriving them of
their property interest in [G.M.L.] § 207-c benefits without due
process in the form of a hearing, and in returning otherwise
disabled persons to work upon the directive of Robert J. Bilsky."
Am. Compl., ¶84.

Keeping in mind that the Court has not yet dismissed the
procedural due process cause of action relating to the termination
of Plaintiff's G.M.L. § 207-c benefits, the Court finds that the
Monell allegations quoted above state "enough facts to state a
claim to relief that is plausible on its face," Twombly, 550 U.S.
at 570. They are therefore sufficient to avoid dismissal.

**IV.  Conclusion**

The first, second, fourth, and fifth causes of action are
dismissed in their entirety for the reasons stated above. The third
cause of action is dismissed to the extent that it alleges a
violation of the equal protection clause. The allegations in
support of the procedural due process claim in the third cause of
action are sufficient to withstand a motion to dismiss, and,
moreover, Defendants did not address the due process cause of
action in their motion. Finally, the allegations of municipal

liability in the sixth cause of action are sufficient to withstand a motion to dismiss the complaint.

## V.   Orders

Accordingly, it is hereby

ORDERED that the first cause of action alleging a violation of the ADA is dismissed; and it is further

ORDERED that the second cause of action alleging a violation of the NYHRL is dismissed; and it is further

ORDERED that the third cause of action, to the extent it alleges a violation of the equal protection clause, is dismissed; and it is further

ORDERED that the third cause of action, to the extent it alleges a violation of procedural due process, may proceed; and it is further

ORDERED that the fourth cause of action alleging conspiracy under 42 U.S.C. § 1985 is dismissed; and it is further

ORDERED that the fifth cause of action alleging supervisor's liability is dismissed; and it is further

ORDERED that the sixth cause of action alleging municipal liability may proceed

**ALL OF THE ABOVE IS SO ORDERED.**

S/ Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         May 22, 2012