UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHELLE ALBERTELLI,

       Plaintiff,

-vs-           **No. 09-CV-6039(MAT)**
              **DECISION AND ORDER**
MONROE COUNTY, PATRICK O'FLYNN,
SHERIFF, MONROE COUNTY; GARY
CAIOLA, UNDERSHERIFF, MONROE
COUNTY SHERIFF'S DEPARTMENT,
Individually and in His Official
Capacity; & DR. BORRIS SCHMIGEL,
Individually and in His Official
Capacity, and ROBERT BILSKY,
Individually and in His Official
Capacity,
       Defendants.
_____

## I. Introduction

Plaintiff Michelle Albertelli ("Albertelli" or "Plaintiff"), represented by counsel, filed the instant proceeding against the named Defendants charging them with, <u>inter</u> <u>alia</u>, violations of the Americans with Disabilities Act, the New York State Human Rights Law; and her rights to equal protection, substantive due process, and procedural due process under the United States Constitution. The Court granted Defendants' motion to dismiss all the claims in the complaint except Plaintiff's contention that Defendants deprived her of her right to disability benefits under New York General Municipal Law § 207-c without procedural due process.

Defendants have filed a motion for summary judgment dismissing the sole remaining claim in the complaint, and Plaintiff has

opposed the motion. For the reasons that follow, Defendants' motion for summary judgment is granted.

## II. Factual Background

On July 15, 2004, Albertelli injured her shoulder while working as a deputy sheriff assigned to the Monroe County Jail. She remained out of work for several years and collected benefits pursuant to New York General Municipal Law ("G.M.L.") § 207-c.[1] See Affidavit of Ronald Harling ("Harling Aff."), Jail Superintendent for the Monroe County Sheriff's Office ("MCSO"), ¶ 4 (Dkt. #20-15).

In September 2008, Plaintiff was asked to attend an Independent Medical Examination ("IME") to assess her shoulder injury. See Defs' Ex. I at 32-33.[2] Plaintiff was examined by Dr. Charles M. Totero, who issued a report on September 16, 2008, concluding that although Plaintiff was not capable of returning to regular duty as a deputy jailor, she was capable of restricted duty work. See Defs' Ex. B.

---

[1] Section 207-c of the General Municipal Law deals with the payment of salary, wages, and medical expenses of, inter alia, a deputy sheriff injured in the performance of duty. Section 207-c entitles a deputy sheriff to be paid her salary while disabled if she was injured during the course of duty. See N.Y. Gen'l Mun. Law § 207-c.

[2] Citations herein to "Defs' Ex. __" refer to the exhibits attached to the Declaration of Brian Marianetti, Esq. (Dkt. #25). Citations to "Pl's Ex. __" refer to the exhibits contained in the Appendix to Plaintiff's Rule 56.1 Statement (Dkt. #22-2).

On October 31, 2008, Dr. Boris M. Schmigel, a contractor with the MCSO, concluded that Plaintiff was able to work on "limited duty" and could return to work on November 3, 2008. Id, ¶ 5 (citing Defs' Ex. D). Dr. Schmigel placed the following restrictions on Plaintiff: may work on the computer with proper positioning of keyboard; may have limited inmate contact; no lifting over 20 pounds; no reaching above shoulders; and no twisting, pushing, pulling, or climbing. See Defs' Ex. D.

Also on October 31, 2008, Plaintiff's treating physician, Dr. Michael Maloney, notified the MCSO that Albertelli could return to work as of that day with the following restrictions: "No use of left arm. Use Right Arm only." Defs' Ex. C.

Plaintiff returned to work on November 3, 2008, and apparently was undergoing re-training in a classroom setting. Although MCSO employees typically do not enjoy the privilege of choosing which light duty assignment they would prefer, Defendants accorded that opportunity to Plaintiff. See Defs' Ex. J. On November 24, 2008, Plaintiff and her union representatives met with members of the MCSO administration, who provided her the following options as far as work assignments: working any shift inside the control room; working the catwalk at night during lockdown; or working at the visitation window during the day shift. Id. Plaintiff chose the visitation window assignment. Id.

However, issues soon arose with this assignment. Defendants characterize Plaintiff's complaints as baseless, while Plaintiff contends that Defendants failed to accommodate her physical limitations. In particular, Plaintiff contends that she was placed in situations where the use of force was necessary and she was not able to defend herself because she was not carrying a weapon due to her physical disabilities. See Plaintiff's Statement of Material Facts at 14-15, ¶¶ 18-21 (Dkt. #22-1).

Based upon the pay records submitted by Defendants, it appears that at the end of November 2008, Plaintiff stopped reporting for work and began collecting G.M.L. § 207-c benefits again.

In early January 2009, MCSO staff attempted to contact Plaintiff by telephone to obtain an update as to when she would be returning to work. See Defs' Ex. F. However, she ignored their requests. Despite receiving a hand-delivered order from Major Edward Krenzer directing her to contact her supervisors at the MCSO, Plaintiff did not comply. Id.

On January 7, 2009, Plaintiff's attorney provided MCSO's counsel with a note indicating that she was completely disabled due to the MCSO's failure to adhere to the appropriate medical restrictions. Id.

On January 15, 2009, Harling had a letter hand-delivered to Plaintiff ordering her to appear at a hearing on January 20, 2009, before Hearing Officer Thomas Vasey ("HO Vasey"), Labor Relations

Manager for Monroe County. Plaintiff was informed that the purpose of the hearing was to determine whether the MCSO could terminate her G.M.L. § 207-c benefits based upon her refusal to a work light duty assignment which she had been deemed capable of performing by three physicians. See Defs' Ex. F.

The hearing was conducted in Plaintiff's absence on January 20, 2009. The evidence considered was Dr. Totero's September 16, 2008 report of his IME of Plaintiff. HO Vasey determined there was no evidence to controvert Dr. Totero's findings that Plaintiff was capable of working in a light duty assignment in the MCSO. Accordingly, HO Vasey found, a suspension or discontinuation of her disability benefits "seem[ed] appropriate[,]" but he deferred to the MCSO and Monroe County's Risk Manager, Robert Bilsky, to make the final determination. See Defs' Ex. K.

After the hearing had concluded, Plaintiff's counsel hand-delivered a letter to Harling stating that according to her records, the County had already terminated Plaintiff's G.M.L. § 207-c benefits without a hearing on November 3, 2008, when it returned Plaintiff to work "based on Dr. Schmigel's <u>unilateral</u> determination that she could return to work in the jail in uniform." Defs' Ex. G (emphasis supplied). Therefore, Plaintiff's counsel indicated, Plaintiff would not be attending the hearing. Id.

By letter dated February 3, 2009, Undersheriff Gary Caiola advised Plaintiff that her failure to report for duty on her next scheduled work date would result in the immediate termination of her G.M.L. § 207-c benefits. Plaintiff failed to return to work, and her G.M.L. § 207-c benefits were terminated.

**III. Discussion**

    **A.    Summary Judgment Standard**

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" when it "'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248). In deciding a summary judgment motion, the court must determine whether, "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could

find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000) (citing Anderson, 477 U.S. at 252).

**B.  Section 1983 Claims**

Title 42 of the United States Code, Section 1983 "provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." Eagleston v. Guido, 41 F.3d 865, 875 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). Section 1983 itself creates no substantive rights but rather provides a procedure for redressing the deprivation of rights established elsewhere. Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240 (1994). The necessary elements of a claim under 42 U.S.C. § 1983 are (1) conduct attributable at least in part to a person acting under color of state law; and (2) the deprivation, by such conduct, of a right, privilege or immunity secured by the Constitution or laws of the United States. Id. at 875-76 (citing Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir. 1993)).

There is no dispute that Defendants were, at all relevant times, acting under color of state law. Plaintiff contends that Defendants deprived her of her property interest in disability benefits under G.M.L. § 207-c rights without due process of law as required by the Fourteenth Amendment to the Constitution.

**C. Procedural Due Process**

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest <u>without due process of law</u>." <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990) (emphasis in original). The two-step inquiry involved in analyzing a procedural due process claim asks "(1) whether the plaintiff possessed a liberty or property interest and, if so, (2) what process was due before [s]he could be deprived of that interest." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002); <u>see</u> <u>also</u> <u>Bernheim v. Litt</u>, 79 F.3d 318, 322 (2d Cir. 1996). Defendants concede that Plaintiff's G.M.L. § 207-c benefits are a protected property interest, and that she is entitled to notice and an opportunity to be heard prior to the termination of those benefits. <u>Matter of Park v. Kapica</u>, 8 N.Y.3d 302, 310 (2007); <u>accord</u>, e.g., <u>Clark v. DiNapoli</u>, No. 1:09-cv-1037, 2011 WL 4901330, at *9 (N.D.N.Y. Oct. 14, 2011).

Plaintiff's clam that she did not receive a hearing before termination of her G.M.L. § 207-c benefits is fraught with several factual errors. First, Plaintiff's assertion that she was returned to work based upon the "unilateral" decision of Dr. Schmigel on October 31, 2008, is inaccurate. Two other doctors, including Plaintiff's own physician, concluded that she was capable of

returning to restricted duty work. First, Dr. Totero performed an IME of Plaintiff in September 2008, and concluded that she was capable of returning to work with restrictions. Second, Plaintiff's personal physician, Dr. Maloney, also determined that she could return to work with restrictions. In short, the determination that Plaintiff could return to work with limitations was not the "unilateral" decision of Dr. Schmigel.

Plaintiff contends that Dr. Maloney was "mysteriously" "compelled" to change Plaintiff's diagnosis on the same day Dr. Schmigel issued his opinion that Plaintiff could return to work. See Affidavit of Michelle Albertelli, ¶ 14 (Dkt. #22-3). Plaintiff has never substantiated this speculative assertion, which, in any event, has no bearing on the sole claim pending before the Court–whether Defendants afforded Plaintiff the process she was due in connection with the termination of her G.M.L. § 207-c benefits.

Inaccuracies abound in Plaintiff's assertion that her G.M.L. § 207-c benefits were unjustly terminated without notice or a hearing on or about November 3, 2008, when she returned to a light duty assignment at the MCSO. Defendants have submitted copies of Plaintiff's pay records from November 1, 2008, through February 6, 2009. For the period November 1, 2008, to November 14, 2008, the pay record indicates that Albertelli worked 70 regular hours, which is consistent with the fact that she returned to light duty work on

November 3, 2008. See Declaration of Brian Marianetti, Esq. & Exhibits (Plaintiff's Wage Records) (Dkt. #25-1). For the pay period November 15, 2008, to November 28, 2008, Plaintiff was paid for 60 regular hours, and had 8 holiday hours and 15 sick hours. See Dkt. #25-1. As Defendants point out, Plaintiff would not have received G.M.L. § 207-c benefits for days that she reported to work. Instead, she would have been paid regular wages, which is what occurred in this case.

For the period from November 29, 2008, to December 12, 2008, Plaintiff's records indicate that she was paid for 55 regular hours, 7.5 vacation hours, and 12.5 hours which were categorized as "WC Sheriff 207c"–i.e., hours for which she received G.M.L. § 207-c benefits. See Dkt. #25-1. For the period December 13, 2008, to December 26, 2008, Plaintiff was paid for 42.5 regular hours, 8 holiday hours, and 7 "WC Sheriff 207c" hours. See Dkt. #25-1. For the period from December 27, 2008, to January 9, 2009, Plaintiff had zero regular hours. She was paid for 8 holiday hours and 45 sick hours. See Dkt. #25-1. For the period from January 10, 2009, to January 23, 2009, Plaintiff was paid for 75 hours classified as "WC Sheriff 207c" and 8 holiday hours. See Dkt. #20-6. Finally, from January 24, 2009, to February 6, 2009, Plaintiff was paid for 52.5 hours classified as "WC Sheriff 207c". See Dkt. #20-6.

The wage records submitted by Defendants conclusively demonstrate that Plaintiff received regular wages when she reported to work, and, quite properly, did not receive G.M.L. § 207-c benefits while she was reporting for work. The wage records likewise demonstrate clearly that once Plaintiff stopped reporting for work at the end of November 2008, she automatically began receiving G.M.L. § 207-c benefits again. Those benefits continued to be paid until February 6, 2009, after HO Vasey issued his recommendation that disability benefits be discontinued.

In sum, Plaintiff's claim that her G.M.L. § 207-c benefits were terminated without a hearing is factually and legally baseless. Plaintiff should not be permitted to "game the system" by electing not to attend the hearing regarding the termination of benefits, of which she had ample notice, and subsequently complain that she was denied a hearing in violation of her procedural due process rights. Simply stated, there are no material facts in dispute, and Defendants are entitled as a matter of law to dismissal of the complaint.

### D. Municipal Liability

In a lawsuit brought pursuant to 42 U.S.C. § 1983, a municipality may not be held liable on a theory of respondeat superior. <u>Jeffes v. Barnes</u>, 208, F.3d 49, 57 (2d Cir. 2000) (citing <u>Monell v. Dep't of Social Servs</u>, 436 U.S. at 694. The municipality

maybe be held liable if the conduct that caused the unconstitutional deprivation was undertaken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

Monell, 430 U.S. at 690-91; accord, e.g., Jeffes, 208, F.3d at 57. Liability cannot be imputed to the municipality unless the "injury was inflicted by [its] 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988) (plurality opn.) (quoting Monell, 436 U.S. at 694).

"Under Second Circuit case law, a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor." Henry-Lee v. City of N.Y., 746 F. Supp.2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has explained, "Monell does not provide a separate cause of action . . . [but rather] extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [is] entirely correct." Id.

Here, Plaintiff's Monell claim cannot withstand Defendants' motion for summary judgment. Since Monell demands a constitutional

-12-

violation by a municipality as a prerequisite, a court granting summary judgment for the defendants on the underlying constitutional claim must also grant summary judgment on the associated Monell claim. Segal, 459 F.3d at 219. Because this Court is granting summary judgment in Defendants' favor on Plaintiff's procedural due process claim, summary judgment also must be granted as to Plaintiff's Monell claim. Accord, e.g., Henry-Lee, 746 F. Supp.2d at 567.

The Court cannot let pass without comment Plaintiff's meretricious attempt to create an issue of fact where none exists by seizing on a typographical error in Defendants' Rule 56.1 Statement. The paragraph in question reads, "The MCSO does [sic] have a practice of depriving individuals of their property interest in 207-c benefits without due process. . . ." Defendants' uncorrected Rule 56.1 Statement in turn cites the Harling Declaration, which correctly states in ¶ 20 that the MCSO does not have a practice of depriving individuals of their property interest in 207-c benefits without due process in the form of a hearing." As Defendants note, based upon the context, it is clear that the omission of the word "not" in Defendants' original Rule 56.1 Statement was a mere typographical error and not an admission of Monell liability. Defendants have submitted a corrected Rule 56.1 Statement (Dkt. #23-2) to dispel any confusion.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. #20) is granted, and Plaintiff's complaint (Dkt. #1) is dismissed in its entirety. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: Rochester, New York
September 13, 2012